**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 3:11-CR-00001 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANGEL MILLAN, | ) | |
| *Defendant*. | ) | June 9, 2026 |

**RULING AND ORDER ON THE GOVERNMENT'S MOTION FOR PARTIAL REIMBURSEMENT OF EXPENSES**

Sarala V. Nagala, United States District Judge.

Pending before the Court in this closed criminal matter is the Government's motion for an order directing that $949.00 in funds seized from Defendant Angel Millan—who was sentenced in this Court more than thirteen years ago—be transferred to the Clerk of Court to partially reimburse this District's fund under the Criminal Justice Act of 1964 ("CJA"), 18 U.S.C. § 3006A. Govt's Mot. for Partial Reimbursement of CJA Expenses, ECF No. 923. For the reasons set forth in this ruling, the Government's motion is **GRANTED IN PART**. Specifically, $400.00 shall be disbursed to Millan to satisfy any outstanding child-support obligations for the benefit of his minor child. The remaining funds, $549.00, shall be reimbursed to this District's CJA fund.

I.    **BACKGROUND**

In August of 2011, Angel Millan was arrested in this District for drug-related offenses. *See* ECF Nos. 1, 213. According to the Government, during Millan's arrest, the Federal Bureau of Investigation ("FBI") seized from him funds in the amount of $949.00, which was then held as evidence in the case. Govt's Memo., ECF No. 923-1 at 1. After Millan's arrest, the Court appointed him counsel in accordance with the CJA, based on information he provided in a financial disclosure affidavit. *See* Sealed Fin. Aff., ECF No. 7; Sealed Appt. of Counsel, ECF No. 8. On

March 8, 2012, Millan pleaded guilty to the charge of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(b)(1)(B)(iii) and 846. Minute Entry, ECF No. 390. Thereafter, on November 20, 2012, Millan was sentenced to thirty months of imprisonment and sixty months of supervised release. Minute Entry, ECF No. 632; J., ECF No. 639. Millan's appointed CJA counsel was paid on an interim basis during the representation. *See* Orders, ECF Nos. 387, 718, 736. Millan represents that he successfully terminated supervision on or around October 3, 2018. Def.'s Opp. Br., ECF No. 929 at 2.

In its original motion, the Government stated that the FBI recently contacted the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Connecticut because it intends to release from its evidence storage the funds seized from Millan during his arrest. ECF No. 923 at 1–2. These funds were not forfeited as part of Millan's plea or otherwise. Additionally, Millan did not file any motion to return the funds. ECF No. 929 at 3. The Government represents that the FBI requested confirmation from FLU that any funds belonging to Millan were not subject to any collection actions. ECF No. 923-1 at 2. FLU confirmed, in relevant part, that Millan was appointed CJA counsel during the pendency of his criminal case, which is a reimbursable cost. *Id.*

The Government seeks an order directing turnover of the subject funds to the Clerk of the Court to partially reimburse this District's CJA fund, contending that the funds are now "available" for this purpose, under 18 U.S.C. § 3006A(f). *Id.* Millan, represented by counsel, opposes this motion. ECF No. 929.[1]

As set forth more fully below, after the motion was fully briefed, and because Millan did not submit a sworn affidavit detailing his financial circumstances with his initial opposition, the

---

[1] Defense counsel initially filed an opposition brief as a friend of the court, as she was unable to reach Millan. Counsel thereafter filed a sur-reply brief after making contact with him. *See* Def.'s Sur-Reply Br., ECF No. 933.

Court ordered the parties to submit supplemental briefing. *See* ECF No. 934. Thereafter, Millan filed a financial affidavit, ECF No. 935, and the Government filed a response, ECF No. 936. For the reasons set forth below, the Government's motion is granted in part.

## II.    DISCUSSION

### A.    Jurisdiction

First, the Court finds that it has jurisdiction to decide the Government's motion, notwithstanding that it was filed thirteen years post-judgment.

Courts may exercise jurisdiction over motions filed after the entry of judgment. *See United States v. Durka*, 490 F.2d 478, 479 (7th Cir. 1973) (holding that the district court possessed jurisdiction to enter an order affecting the defendant's property rights despite three months passing since the defendant's acquittal; citing *Wayman v. Southard*, 23 U.S. 1, 23 (1825) (noting that many questions arise subsequent to judgment and the "jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment is satisfied") and *Field v. United States*, 193 F.2d 86, 90 (2d Cir. 1951)). In a similar vein, the Second Circuit has established that the district court has ancillary jurisdiction to address motions regarding the return of seized property even if criminal proceedings are no longer pending. *See Soviero v. United States*, 967 F.2d 791, 792 (2d Cir. 1992).

Additionally, a review of 18 U.S.C. § 3006A and related guidelines, as well as persuasive authority, reflect that district courts have broad authority to assess reimbursement requests, regardless of when they are filed. The CJA authorizes district courts to appoint counsel for criminal defendants if they are "financially unable" to hire counsel of their own. 18 U.S.C. § 3006A(b). The Act also provides that if "at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or

authorize payment as provided in subsection (f), as the interests of justice may dictate." 18 U.S.C.

§ 3006A(c). Subsection (f) then authorizes the court to order reimbursement of funds under certain

circumstances, stating:

> *Whenever* the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney. . . or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

18 U.S.C. § 3006A(f) (emphasis added).

Notably absent from the relevant provisions is any temporal limitation. *See United States v. Bell*, Nos. 07-26 & 04-382, 2007 WL 2303587, at *2 (N.D. Ill. Aug. 9, 2007) (noting that the court is not aware of any authority specifying a "time limit by which the government must request reimbursement under 3006A(f)"). To the contrary, the statute's plain language, particularly phrases such as "at any time after appointment of counsel" and "whenever," suggest that the Court has broad discretion to reassess a defendant's financial circumstances and to issue any order of reimbursement upon an appropriate finding. Certain guidelines, such as the CJA Plan for the Second Circuit, contain similar language.[2]

Moreover, courts in various circuits have addressed requests for turnover of funds for reimbursement of CJA costs after the entry of judgment. *See, e.g., Bell,* 2007 WL 2303587, at *2–3 (deciding concurrent motion for return of seized property and motion for reimbursement one year after sentencing); *United States v. Illarramendi*, No. 3:11-CR-41 (SRU), 2015 WL 8664174,

---

[2] The Second Circuit has established a CJA Plan setting forth the procedures for the appointment of counsel. *See* CJA Plan for the Second Circuit (as amended September 28, 2016), available at http://www.ctd.uscourts.gov/cja-plans (last accessed on June 9, 2026). This plan echoes the language in the CJA, providing that: "The Court may at any time after appointment of counsel, re-examine the financial status of a CJA client. If the Court finds that a CJA client is financially able to obtain counsel or make partial payment for the CJA client's representation, the appointment should be terminated or partial payment [is] required." Although the District of Connecticut's CJA plan does not contain similar language, the statutory language prevails.

*3 (D. Conn. Dec. 11, 2015) (granting government's motion for a refund of fees to the CJA fund in a restitution order six months post-sentencing); *United States v. Lemaster*, No. 2:07-64, 2012 WL 407245, at *1 (S.D. W.Va. Feb. 8, 2012) (ordering the defendant to pay the unpaid balance of attorney's fees pursuant to § 3006A(f) more than four years after sentencing, where the defendant failed to comply with the court's original reimbursement order and remained financially able to pay the fees out of a forthcoming annuity payment); *see also United States v. Wilson*, 597 F.3d 353, 357 (6th Cir. 2010) ("What the Act gives with one hand to a criminal defendant 'financially unable' to pay for legal services it takes away with the other if the defendant turns out to be 'financially able' to obtain counsel."); *United States v. Medford*, 608 F. Supp. 2d 709, 713 (W.D.N.C. 2009) (holding that the pendency of a defendant's appeal of his conviction and sentence did not deprive the district court of jurisdiction to consider whether to modify the defendant's CJA reimbursement payment).[3]    Although none of these cases involved a delay as lengthy as that present here, they nonetheless support the conclusion that reimbursement orders may be entered post-judgment.  Given this authority and the absence of any temporal restrictions in the relevant provisions of the CJA, the Court finds that it has jurisdiction to adjudicate the Government's motion.

Millan relies on *Durka* to argue that the Court should apply a reasonableness analysis in deciding the Government's motion and that a request for reimbursement made thirteen years post-judgement is *per se* unreasonable.  In *Durka*, the Seventh Circuit considered a defendant's challenge to a district court order—issued three months after acquittal—directing that he pay $3,250 in reimbursement costs for services rendered and expenses incurred by his court-appointed

---

[3] The Government cites to a case in this district, *United States v. Coniam*, 574 F. Supp. 615 (D. Conn. 1983), for the proposition that courts have authorized reimbursement of CJA funds over time, but it appears that the relevant order was issued during the pendency of the case, not after judgment had entered.

counsel. *Durka*, 490 F.2d at 479. The Seventh Circuit held that the district court possessed jurisdiction to enter the order despite the passage of three months from the rendition of judgment and the defendant's discharge. *Id.* The court further held that it is "not an abuse of authority if within a reasonable time after judgment the district court directs a defendant found financially able to obtain counsel or to make partial payment to pay for services rendered or expenses incurred by appointed counsel." *Id.* Although the court did not set a brightline rule requiring a specific timeframe by which a reimbursement request should be made, it concluded that in that case, three months was reasonable given the complexity of the case and multiple defendants. *Id.* at 479–80.

Of course, *Durka* is not binding on this Court and, as discussed below, the Second Circuit has only made clear that a court may not enter an order of reimbursement absent an appropriate inquiry as to the availability of funds (without regard to any "reasonableness" analysis). But even if the Court were to apply *Durka's* reasonableness standard to the facts here, it is not convinced that the Government's request is arbitrary. Although the Court questions the Government's significant delay in either returning the funds to Millan or filing the instant motion—and agrees with Millan that the Government has not proffered any explanation for its delay—there is no indication in the record that the Government exhibited bad faith in its failure to make such a motion sooner. *See Bell*, 2007 WL 2303587, at *2. For example, the Government claims that the FBI only recently contacted it about releasing the funds from evidence. Thus, the Court is convinced it has jurisdiction to decide the Government's motion.

### B. "Availability" of Funds

Having determined that the Court has jurisdiction to decide the Government's motion, the Court next addresses whether the subject funds are "available" within the meaning of the statute.

As noted above, the CJA provides that funds may be reimbursed upon a finding of availability. *See* 18 U.S.C. § 3006A(f). "Before a finding of 'availability' can properly be made,

6

the district judge should be satisfied that, in ordering reimbursement in any specified amount the defendant will not suffer extreme hardship as a consequence of being deprived of his funds." *United States v. Bracewell*, 569 F.2d 1194, 1199 (2d Cir. 1978).  In making this determination, the Court must consider the defendant's needs (including any needs he may have during his imprisonment), the defendant's family obligations, and funds owed to any third parties.  *Id.* at 1200.  Although these factors must be considered, "the district judge need not permit a full-fledged adversarial inquiry into the nature and amount of a defendant's assets; nor need he become involved in determining priorities to those assets."  *Id.*  Rather, any defenses to payment advanced by a defendant should be fully considered.  *Id.* (citing *Durka*, 490 F.2d at 478).  Absent an abuse of discretion, a district judge's findings as to the "availability" of funds, if supported by an "adequate inquiry," will ordinarily not be disturbed.  *Id.*

### 1.  An Inquiry is Necessary

As an initial matter, the Court finds that an inquiry into Plaintiff's current financial circumstances is appropriate to determine the availability of the subject funds.

The Court is not persuaded by either of the parties' arguments in this regard.  The Government contends that the funds are now available within the meaning of the statute because they are being released from evidence.  To be sure, the Second Circuit has recognized that funds are not available when seized for evidentiary use, *see Bracewell*, 569 F.2d at 1197 n.2, and it is thus plausible that the funds here were unavailable insofar as they were being held by the FBI.  But the fact that those funds are being released from evidence does not automatically render them available, without any further inquiry into Millan's circumstances.  Indeed, "the district court is obliged to conduct an inquiry into [the defendant's] personal and familial financial status, and to make a finding on the record that the funds being appropriated to repay counsel costs are 'available' for that purpose."  *Id.* at 1197.  And in making this determination, it is the defendant's

7

present circumstances that matter. *See United States v. Danielson*, 325 F.3d 1054, 1077 (9th Cir. 2003) (collecting cases).

Millan, for his part, acknowledges that the Court may not award the Government its requested relief without conducting an inquiry, but he contends that such an inquiry at this juncture would be improper given the significant passage of time. Although Millan advances various legal and public policy arguments against reimbursement, he does not explain why the funds should be returned to him rather than applied to reimbursement. Nor did Millan's initial brief proffer any evidence or provide any information regarding his current personal and financial circumstances.

As *Bracewell* requires district courts to be satisfied that a defendant would not suffer extreme hardship as a consequence of being deprived of his funds, *see Bracewell*, 569 F.2d at 1199, the Court ordered the parties to submit supplemental briefing on this issue. *See* ECF No. 934. Specifically, the Court ordered Millan to either file (a) a notice stating that he affirmatively waives the inquiry and intends to advance no defenses to the Government's motion based on his present financial circumstances; or (b) a sworn affidavit detailing his present financial circumstances, including his own financial needs and those of his family. *Id.* Pursuant to the Court's order, Millan filed a financial affidavit setting forth his present financial circumstances and family obligations, and the Government filed a response. ECF Nos. 935, 936.

### 2. *Millan's Financial Circumstances*

In Millan's affidavit, he states that he is employed at a temporary job at a local resort, earning $1,600 per month. ECF No. 935 at 1–2. He further reports monthly expenses totaling $1,760, and child support debt in the amount of $400. *Id.* at 1. He has no assets. *Id.* Millan contends that he financially supports his wife and minor daughter, and pays weekly child support payments in the amount of $160 for his minor son from a prior relationship. *Id.* at 2. He is responsible for child support payments until his son reaches the age of twenty-one. *Id.* Plaintiff

also explains that he is $400 in arrears due to a period of unemployment where he was unable to make child support payments. *Id.*

Given Millan's employment and monthly expenses, the Court cannot consider him indigent, such that the withholding of $949 would result in extreme financial hardship. Nor has Millan advanced any new defenses to reimbursement of the CJA fund. That said, the Court acknowledges that Millan owes a debt to his minor child. Since the Government does not oppose directing a portion of the funds toward Millan's court-ordered child support obligations—and does not suggest that the child support arrears are anything but court-ordered—the Court deems it appropriate to proceed as follows: the Court directs that $400.00 be disbursed to Millan to satisfy any outstanding court-ordered child-support obligations for the benefit of his minor child. *See, e.g., Bell*, 2007 WL 2303587, at *3 (ordering the government to return seized funds to defendant on the condition that they be used for his daughter's braces); *see also Bracewell*, 569 F.2d at 1199 (noting that the Court should be "sensitive to the defendant's responsibilities to his family"). The remaining funds, $549.00, shall be reimbursed to this District's CJA fund.

Accordingly, the Government's motion is granted in part. The Government shall make any necessary arrangements with the FBI, CLU or any other requisite entities to ensure compliance with this order within thirty (30) days of issuance.

9

## III.    CONCLUSION

For the reasons described herein, Defendant's motion for partial reimbursement at ECF No. 923 is GRANTED IN PART.

**SO ORDERED** at Hartford, Connecticut, this 9th day of June, 2026.

               */s/ Sarala V. Nagala*
               SARALA V. NAGALA
               UNITED STATES DISTRICT JUDGE